**INNOVATIVE WOMEN'S MEDIA ASSOCIATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**NTW, Inc., Intervenor.**

No. 92–1525.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 18, 1993.

Decided March 4, 1994.

J. Brian DeBoice, Washington, DC, argued the cause for appellant. With him on the briefs was Lawrence N. Cohn.

Gregory M. Christopher, Counsel, Federal Communications Commission, Washington, DC, argued the cause for appellee. With him on the brief were Renee Licht, Acting General Counsel, and Daniel M. Armstrong, Associate General Counsel, Federal Communications Commission.

Gene A. Bechtel, Washington, DC, was on the brief for intervenor NTW, Inc.

Before: SENTELLE and RANDOLPH, Circuit Judges, and LEVIN H. CAMPBELL *, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Innovative Women's Media Association, a Louisiana limited partnership, wanted to operate a new FM radio station in Shreveport, Louisiana. So did nine others. An adminis- trative law judge at the Federal Communications Commission held a comparative hearing and picked Innovative as the best qualified. *Opportunity Broadcasting of Shreveport,* 5 F.C.C.R. 2601 (1990). Some of the losers appealed. The Commission's Review Board sent the case back for a hearing on issues concerning real party-in-interest, financial qualifications, and false financial certification. *Opportunity Broadcasting of Shreveport,* 6 F.C.C.R. 1499 (Rev.Bd.1991). Innovative's troubles began shortly thereafter, and even- tually led to the dismissal, with prejudice, of its application for failure to prosecute, a sanction Innovative asks us to set aside in this appeal.

The sequence of events leading up to the dismissal is important. The Review Board released its remand decision on March 12, 1991. On March 20, 1991, the ALJ set May 21, 1991, as the date for the parties to ex- change written testimony, and June 11, 1991, as the date for the hearing. For the next three weeks nothing much happened. Then, on April 11, 1991, one of the applicants, NTW, Inc., noticed the deposition of Innova- tive's limited partner, Kent S. Foster, for May 7.

During the four years between the filing of its application and the remand order, Innova- tive had been represented by Michael J. Hir- rel, Esq. In early to mid-April 1991, Hirrel, by then a sole practitioner, told Innovative that a scheduling conflict might cause him to withdraw as counsel. Later in April, Hirrel let Innovative know he would have to resign, effective April 24. On May 6, he filed a notice of withdrawal with the Commission. On May 7, Foster appeared for his deposition without counsel. NTW's attorney agreed to a two-day postponement.

The next day, May 8, Foster spoke to attorney Arthur H. Harding, Esq., who was representing Foster in unrelated matters. Harding suggested that his firm might be able to represent Innovative. On the morn- ing of May 9, in a telephone call with Har- ding, NTW's attorney agreed to a one week postponement of Foster's deposition (to May

* Of the United States Court of Appeals for the First Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

16). After looking further into the matter, however, Harding declined to take Innovative on as a client. He so informed one of Innovative's general partners and agreed to assist in the selection of new counsel. Between May 10 and May 20, Harding spoke to eight law firms. Some had to investigate to determine whether they were disqualified. Six found conflicts. One of the firms was too busy. The eighth firm Harding solicited, Cohn and Marks, expressed interest and, after checking for conflicts, took the case on May 22.

On May 15, while Innovative's search was underway, Harding again spoke with NTW's attorney and informed him that Innovative had not yet retained new counsel. Harding asserts that NTW's attorney agreed to a further postponement of Foster's deposition, then scheduled for the next day. NTW's attorney apparently did not so understand the conversation, and waited on May 16 with a court reporter to begin the deposition. Foster did not show up.

On May 22, the same day Cohn and Marks agreed to represent Innovative, but one day after the date for exchanging written testimony, Cohn and Marks entered a "limited appearance" for the purpose of filing a motion for a prehearing conference in order to set new procedural dates. NTW and two other applicants responded with a joint motion to dismiss Innovative's application for failure to prosecute. The ALJ denied Innovative's motion and dismissed Innovative's application, citing its failure to produce Foster for deposition and to serve its direct case testimony on May 21.

The Commission, following the decision of its Review Board, *Opportunity Broadcasting of Shreveport,* 6 F.C.C.R. 5018, 5019 (Rev.Bd. 1991), affirmed by denying Innovative's application for review, *Opportunity Broadcasting of Shreveport,* 7 F.C.C.R. 1384 (1992), and later denied its petition for reconsideration, *Opportunity Broadcasting of Shreveport,* 7 F.C.C.R. 5929 (1992). Innovative's "alleged difficulty" in finding new counsel, the Commission held, was no excuse. According to the Commission, the problem could have been avoided if Innovative simply had hired one of the attorneys representing an applicant in which Foster had an interest in other Commission proceedings. Innovative had not, the Commission stated, explained its inaction between April 24, when Hirrel said he was resigning, and May 8, when Innovative first spoke to another attorney; or the "delay" between May 22, when Cohn and Marks entered a limited appearance, and June 18, when Cohn and Marks made an unqualified appearance. 7 F.C.C.R. at 1384. One of Innovative's general partners said that she did not know any communications attorneys in Washington, D.C. The Commission thought little of this excuse because in a deposition three years earlier she testified about researching the Washington, D.C., communications bar before retaining Hirrel. The Commission also thought it significant that Innovative had not been ready to proceed on June 11, when the ALJ issued the order dismissing its application. *Id.*

There is no doubt that the Commission may require strict adherence to deadlines. *See Hillebrand Broadcasting, Inc.,* 1 F.C.C.R. 419 (1986). And there is no doubt that presiding officers have authority to dismiss with prejudice for failure to prosecute. A regulation provides that authority, although without specifying standards for its exercise. 47 C.F.R. § 73.3568(b). *The Dunlin Group,* 6 F.C.C.R. 4642, 4644 (Rev.Bd. 1991), on which both parties rely, held that dismissal for failure to prosecute would be warranted for "open defiance of an order demanding the production of a witness" or when there has been a "pattern of dilatory, disruptive, or recalcitrant conduct so sharply out of order as to absolutely compel dismissal." *Dunlin* also recognized, however, that "dismissal is an extreme remedy to be employed when an applicant's conduct is so disruptive, contemptuous, or prejudicial that no lesser measure will reasonably protect the proceedings." *Id.* at 4643, citing *Comuni-Centre Broadcasting, Inc. v. FCC,* 856 F.2d 1551 (D.C.Cir.1988), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989). An applicant therefore should not suffer this sanction unless, "with contempt or inexcusable sloth, [it] plainly defies an order." 6 F.C.C.R. at 4644. *See also HS Communications, Inc.,* 6 F.C.C.R. 3609 (Rev.Bd.1991);

*Ponchartrain Broadcasting Co.,* 5 F.C.C.R. 3991 (Rev.Bd.1990); *Maricopa County Community College Dist.,* 4 F.C.C.R. 7754 (Rev. Bd.1989).

Viewed in this light, the Commission's reasons for sustaining the dismissal fall short. During the four years before the spring 1991 hiatus, indications are that Innovative met all deadlines, observed all rules, complied with all orders and comported itself respectfully. No pattern of dilatory or disruptive conduct existed, and none has been alleged. Hirrel's resignation unsettled the orderly course of the litigation, but there is nothing to suggest that Innovative caused him to withdraw. It is true that nearly a month expired between April 24, when Hirrel told Innovative he was resigning, and May 22, when Cohn and Marks came on board. But, as Commission counsel candidly admitted at oral argument, chances are that new counsel's need to catch up on four years of proceedings would have necessitated an extension of time even if Innovative hired a replacement at the earliest possible moment. Furthermore, there was nothing defiant or contemptuous in Innovative's waiting until Hirrel finally abandoned ship before it tried to retain new counsel. Hirrel knew the case and Innovative had invested four years with him. The possibility that his schedule would open up, and thus avert the delay (and expense) attendant to bringing new counsel up to speed, was a prospect not only Innovative but also the presiding officer and the other applicants should have welcomed. Commission counsel tells us that Innovative should have preserved its rights by having Hirrel file a motion for an extension of time before he departed. The Commission did not adopt this argument, and for good reason. Lawyers are expected to give legal advice to their clients, not the other way around.

As to the period after Hirrel's official departure, the record shows not "sloth," but a consistent effort by Innovative to obtain representation in the face of considerable obstacles. Innovative pointed out, without contradiction, that 52 law firms and sole practitioners, including some of the largest and most prominent firms in the country, were already representing applicants adverse to other applicants in which Foster was a principal. That these conflicts caused Innovative difficulties in obtaining new counsel is not now disputed. It is no answer to say, as the Commission did in its order denying the application for review, that Innovative could have hired one of the attorneys representing an applicant in which Foster had an interest. *See* 7 F.C.C.R. at 1384. The Commission's counsel admitted at oral argument that it would have been a serious tactical blunder for Innovative to have retained a lawyer working for a Foster-related applicant. One of the issues on remand was the extent of Foster's control over Innovative despite his nominal status as a passive participant. *See, e.g., Fresno FM Ltd. Partnership,* 6 F.C.C.R. 6998, 7001 n. 6 (1991), *recons. denied,* 7 F.C.C.R. 4339 (1992).

The Commission was correct that Foster did not appear for the deposition on May 16; that Innovative missed the May 21 deadline for exchanging testimony; and that Innovative would not have been prepared to go forward on June 11, the date set for the hearing. But Foster and Harding attributed Foster's no-show to a misunderstanding between them and NTW's counsel, and neither the Commission nor the ALJ found them not truthful in this respect. As to missing the exchange deadline and not being ready for the hearing, these are entirely attributable to Innovative's not having counsel until May 22. One could hardly expect Innovative to prepare direct testimony without legal advice and still less could one expect its general partners to get ready for a hearing without counsel. The Commission also mentioned that Cohn and Marks only entered a limited appearance when they filed a motion for an extension of time on May 22. The Commission's point escapes us. The motion suggested that Innovative and Cohn and Marks were that day finalizing their arrangements and Harding's uncontroverted affidavit confirms the truth of this.

In short, the Commission's reasoning does not support treating the delay and disruption resulting from Hirrel's resignation and Innovative's search for a new attorney as the sort of inexcusable or contumacious behavior warranting dismissal for failure to prosecute.

Dismissing Innovative's application with prejudice was "arbitrary, capricious, or not otherwise in accordance with law." 5 U.S.C. § 706(2)(a); *see* 47 U.S.C. § 402(g). The Commission's orders are reversed. This case is remanded to the Commission for further action consistent with this opinion.

*So Ordered.*